Westbrook, J.
The relator, by certiorari, seeks to have its assessments'in the town of Rosendale, Ulster county, New York, during the years 1882 and 1883, reviewed and corrected.
It is the valuation of its canal within the limits of that town of which the relator complains; such valuation, including its telegraph line, being $268,000 in 1882, and $292,000 in 1883.
The canal extends from Eddyville in the county of Ulster and state of New York, to Honesdale in the state of Pennsylvania, and is 108 miles in length, five and one-half of which are within said town of Rosendale. The valuation, therefore, of the canal per mile in the town was $48,727.26 in 1882 and $49,454 in 1883. The only point to he discussed is the valuation of the canal. The valuation of the real estate of other parties than the relator and the Wallkill Valley railway in such town was examined by the judge writing this opinion *480 upon the certiorcm'i prosecuted by such railway, and such valuation was found to be forty per cent only of its actual value. That conclusion was recently sustained at general term, and need not now be discussed. The evidence of valuation given upon these proceedings is the same as was given upon the cet'tiorari in the other, except that the appraisers who valued the property of the town upon a recent appeal to the state assessors were examined, and such evidence will be found fully to justify the conclusion as to value in the other proceeding.
Neither will it be necessary at this time to discuss at any length the value of the canal per mile. That question has also been recently examined in the certiorari brought by the present relator to review the assessments in the town of Marbletown during the same years. The conclusion reached in that proceeding was that the actual value of the canal per mile, estimated as the statute directs the assessors to do, “ at its full and. true value as they would appraise the same in payment of a just debt due from a solvent debtor ” (2 R. S. [7th ed.], 992, sec. 17), was not greater than $16,000 per mile. The reasons for reaching that conclusion are contained in the other opinion and to that reference is made.
In view of the elaborate argument, however, of the counsel for the respondents it is proper to say a few words in addition to the opinion in the other case. The statute to which reference has been made directs the valuation to be estimated not upon its cost nor upon its value to the relator, but upon the transfer of the property to a creditor in the payment of a debt. No creditor would receive it for any other purpose than as an investment, and in receiving it he would calculate its earning capacity. The canal is undoubtedly of greater value to the relator than it would be to any other person. It is still used as the way to transport its own coal from its mines in Pennsylvania to tide water upon the Hudson. For this purpose it was built, and has ever since been operated. Its tolls are very much less than its operating and maintaining expenses, the latter being more than three times as great as *481 the former. This canal, however, in addition pays something to the relator as an outlet for its own production. If, however, it was parted with to another, the use which the relator makes of it would have very little effect. If the buyer had no coal to transport, when he ascertained that the cost of maintenance and operation was three times as great as any receipts he could expect, what would he give ? And if he had coal to transport, what would he give for this old and almost obsolete way? The relator, of course, cannot afford to throw away its canal and build a railroad. It would then sink the capital invested in the canal, and invest additional capital in a new mode of transportation. Hot only would it sink the capital invested in the canal, but all the money invested in its boats, machinery and appliances, adapted to its navigation, and pay out very large sums for a railroad, cars, appliances and machinery therewith to do its business. In short the abandonment of its canal by the relator is throwing away its money invested in the structure and the machinery, boats, &c., required for its business, and the expenditure of a very large sum for a new avenue and means of transportation. The creditor buying would, however, have a different problem before him. He has money to invest, and he would have a choice between an, investment in a canal, which would involve also a large additional sum for boats, machinery and appliances adapted for the canal, and a railroad. Hecessarily he would consider the question from a different standpoint than the relator, for the selection of either involves no sinking and throwing away of capital already invested. The question is, what would such a person give for the canal per mile ? It is difficult to say, it is true, but it certainly would be unsafe to say that he would give a greater sum per mile than individuals of the experience, character and standing of the late Mr. Dickson, and Mr. Young, estimate it to be worth — from $5,000 to $8,000 per mile. When its value is put, as it was in the Marbletown case, and as it will be in this, at $16,000 per mile, a sum twice as great as the persons referred to and *482 best knowing its value by their highest figures place it, it is believed that the other taxpayers of the town should be more than satisfied. Neither does the fact that the late Mr. Dickson, Mr. Young, and others did or do now sustain official relations to the relator, detract from their evidence. They were or are men who grew up on the canal, having passed through all its grades of employment from boatmen up, and their years of faithful service enabled them, not only to speak as experts, but also with the weight of character which honorable conduct gives.
« It has already been said that the other property in the town was valued at forty per cent of its actual value. Do the respondents claim that the same rule was applied to that of the relator ? The law, justice, and official oaths demand that they should have done so. The valuation of the canal per mile during the two years averages $49,090. If that be forty per cent of its actual value, then we have the astonishing result, that the respondents found the actual value of the canal about $122,000 per mile. Upon this fact comment is unnecessary.
To equalize the taxation of the relator with others in the town, its canal should be appraised at a sum per mile, which forty per cent of $16,000 would produce. .
With so'me doubt as to its correctness no costs will be imposed upon the respondents. Their conduct in deliberately valuing other property in the town at only forty per cent of its value, after their attention had been drawn to the error by the opinion in the Wallkill Valley Railway Case has not been overlooked. It was, however, the opinion of a single judge, and perhaps good faith in their action should be imputed. There are some things to which attention has been called now and some which were commented upon in the other proceeding against them by the railway, which are worthy of attention on the question of good faith. Believing, however, that wrong practice for years in their town has misled the respondents, no costs will be imposed.